**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

_____

DAVID TOM, individually and on behalf
of a class of all persons and entities
similarly situated,

          Plaintiff

vs.

ARIUM REAL ESTATE, LLC.

          Defendant.

Case No.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.    As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." _Barr v. Am. Ass'n of Political Consultants_, 140 S. Ct. 2335, 2343 (2020).

2.    However, the TCPA doesn't only restrict robocalls.

1

3.    "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.    "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress

2

enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.      Plaintiff David Tom ("Plaintiff") brings this action under the TCPA alleging that Arium Real Estate, LLC ("Defendant") called the Plaintiff, whose number is on the National Do Not Call Registry, including some calls which utilized highly-illegal prerecorded messages. Those calls were made without the call recipient's prior express written consent.

6.      Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

8.      Plaintiff David Tom is a person residing in Florida.

9.      Defendant is a real estate limited liability company headquartered in Palm Bay, Brevard County, Florida, which is located within this District.

10.    Defendant provides consumer services in Florida.  Defendant's real estate sales associates and sales associates place unsolicited and prerecorded telephone calls to Florida residents to sell, market, and promote Defendant's services and/or to solicit information from consumers that may be used to sell these consumers services.

## Jurisdiction & Venue

11.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law. The Court has supplemental jurisdiction over Plaintiff's claims that arise under Florida state law.

12.    Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendant made the calls to Plaintiff and the putative class members from this District. Defendant placed these calls to Plaintiff and putative class members within this District, and to their residential telephone numbers with local area codes associated with this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

## The Telephone Consumer Protection Act

13.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

4

14.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

15.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id*.

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Prerecorded Calls to Residential Lines

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." 47 U.S.C. § 227(b)(1)(B).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

20.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

### The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.

21.     The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

22.     The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

23.     The regulations also require any caller identification information to "include either CPN or ANI" and "permit any individual to make a do-not-call request during regular business hours." *Id.*

24.     A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

25.    This Court recently confirmed that there is a private right of action for violations of this provision. *Id.*; *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *7-*8 (E.D. Mich. Aug. 21, 2025).

The Florida Telephone Solicitations Act

26.    The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

27.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

28.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

29.    Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## Factual Allegations

30.    The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

7

31.   Defendant is a real estate limited liability company.

32.   To generate and promote its business, the Defendant placed illegal telemarketing calls to numbers on the National Do Not Call Registry, including using highly-illegal prerecorded calls.

33.   Plaintiff's residential telephone number, (321) XXX-XXX, is a residential non-commercial telephone number.[1]

34.   The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

35.   Moreover, the telephone line is assigned to a cellular service which is presumptively residential.

36.   The telephone number is Plaintiff's cell phone.

37.   The telephone number is registered in Plaintiff's name and at his residential address. Plaintiff pays for the number out of his own personal funds.

38.   Plaintiff uses the number for personal, residential, and household reasons.

39.   Plaintiff's telephone number has been listed on the National Do Not Call Registry since 2003, twenty-two or more years prior to the Defendant's calls.

---

[1].   Plaintiff's full telephone number that received the calls will be provided directly to counsel for Defendant upon entry of an appearance. Plaintiff is not providing his full telephone number in this public document to prevent further improper and unauthorized use of his telephone number.

40.    Plaintiff has never been a customer of the Defendant, never did business with the Defendant, nor asked or inquired to be a customer of the Defendant.

41.    Plaintiff never consented to receive calls or text messages from the Defendant.

42.    Despite that, on at least October 30, 2025, Plaintiff received at least two calls from the Defendant from (321) 730-2016.

43.    At least one of the calls placed by the Defendant to the Plaintiff used an artificial voice by way of an automated voicemail.

44.    Such systems call a cell phone with two simultaneous calls so as to send the second call to voicemail.

45.    The prerecorded voicemail left by Defendant began playing as soon as the voicemail answered and was cut off at the beginning of the prerecorded message, prior to the "beep" and when the recording started, and stated the following:

> *"…Just reaching out to a few owners nearby about your property options this quarter.  No rush.  Just wanted to share some quick numbers for your zip.  You can text or call me at 321-389-5568.  Again, it's Mark Lindo.  Talk soon."*

46.    The call was obviously prerecorded because it would be illogical to call a telephone number and then start speaking and to begin leaving a message while still listening to a voicemail greeting.

47.    The prerecorded call was Defendant's attempt to advertise its real estate services.

48.    Plaintiff knows the aforementioned call was placed using and beginning with prerecorded voice because Plaintiff listened to the recording and the voice sounded scripted and recorded in advance.

49.    Additionally, part of the message played before the beep, as outlined above.

50.    The calls all came from the following number, and transmitted the caller ID, in the form of both CPN and ANI as follows. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Avail? | CNAM Result | Carrier of Record |
| --- | --- | --- | --- |
| 3217302016 | Y | COCOA BEACH FL | Twilio |

51.    As the aforementioned chart shows, the CNAM transmitted by the Defendant's ultimate telephone carrier provided CNAM functionality, but the CNAM functionality transmitted a geographic location, and not the Defendant's name or telemarketer's name.

52.    Twilio provides its customers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, their default CNAM customer setting is to transmit the geographic location

10

of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

53.    It is not possible to call the number back to lodge a Do Not Call request during regular business hours.

54.    Indeed, the Plaintiff did so verify by calling each of the other numbers with a voice call and not being able to reach anyone.

55.    The number does not play any messages, recordings, or other information telling callers how to opt out of receiving calls.

56.    The number does not permit a caller to call the number and lodge a do not call request during regular business hours. It is not possible to call the number back to lodge a Do Not Call request during regular business hours.

57.    Nor will anybody calling the number receive an alternate number to call to lodge a Do Not Call request during regular business hours.

58.    The calls were placed for and on behalf of Defendant.

59.    Mark Lindo is a real estate associate, or "realtor," that works for Defendant as a member of its "team."[2]

60.    Defendant is vicariously liable for any and all calls made by members of its team, including its respective brokers, agents, or sales associates.

61.    Florida Statute 475.01(1)(b) provides that a "Broker Associate . . . operates as a sales associate in the employ of another."

---

[2].    *See* https://ariumrealestate.com/team and https://ariumrealestate.com/agent/mark-lindo (last visited March 9, 2026)

11

62. Likewise, Florida Statute 475.01(1)(j) provides that a "Sales Associate" "act[s] under the direction, control, or management of another."

63. In addition, Florida Statute 475.01(2) expressly defines "employ" "to describe the relationship between a broker and a sales associate, include[ing] an independent contractor relationship when such relationship is intended by and established between a broker and a sales associate."

64. Plaintiff objectively and subjectively believed that the telemarketing calls and text messages were placed by, or on behalf of, Defendant.

65. Defendant gave express or implied permission to their sales associates to use Defendant's name when marketing and soliciting prospective clients and properties. Regardless, Defendant benefited, or intended to benefit, from any monies derived from the telemarketing calls placed by its team.

66. Defendant requires its sales teams, brokers, and sales associates, to market and solicit prospective clients and properties only on behalf of Defendant.

67. Defendant makes a "VERY INTENTIONAL effort to help agents grow their business, [by providing] training, mentoring . . . and world class systems, resources and office staff . . . ."[3]

68. RIAN TEAM is prohibited from advertising, marketing, soliciting business for, selling, or engaging in any other real estate business, on behalf of any other real estate company, competition with EXP Realty.

---

[3]. *See* https://joinarium.com/ (last visited March 9, 2026)

69.    The aforementioned calls to the Plaintiff were unwanted.

70.    The calls were nonconsensual encounters.

71.    Plaintiff's privacy has been violated by the above-described telemarketing calls.

72.    Plaintiff never provided his consent or requested the calls.

73.    Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded. They were not provided legally compliant opt out mechanisms. Furthermore, the calls unnecessarily used power, network resources, tied up landlines from receiving other calls, and wear and tear.

74.    These calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

75.    In addition to using Plaintiff's cellular data, storage, and battery life, he suffered invasion of privacy, aggravation, annoyance, frustration, intrusion upon seclusion, distraction forcing him to divert attention away from his work, home life and other activities, inconvenience, wasted time, risk of future harm, and violation of his substantive rights under the TCPA and FTSA to remain free of unsolicited calls. *See Drazen v. GoDaddy.com, LLC*, No. 21-10199 (11th Cir. July 24, 2023 (en banc) ("A plaintiff who receives an unwanted, illegal text message suffers a concrete injury"); *See also Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact" . . . "[A] small injury [] is enough for standing purposes");

See, e.g., Mims v. Arrow Fin. Servs., Inc., 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

76.    Plaintiff and Class Members had to spend wasted time away from work, family, and personal activities, and suffered aggravation, because of Defendants' unsolicited telemarketing calls and text messages.

77.

## Class Action Statement

78.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

79.    Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

80.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone, residential telephone, or any other protected telephone service (3) from or on behalf of the Defendant (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2)

two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Florida Telephone Solicitation Act Automated System Class:** All persons in the U.S., who, (1) received a telephonic sales call from Defendant made from or into Florida regarding real estate goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) from four years prior to the filing of the Complaint to the date of trial.

81.    Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

82.    Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

83.    Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

84.    This Class Action Complaint seeks injunctive relief and money damages.

85.    The Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

15

86. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

87. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

88. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

89. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

90. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a. Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b. Whether Defendant made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

c. Whether the Defendant used automatic equipment or prerecorded voices as defined by Florida law to send telemarketing calls;

d. Whether Defendant's conduct constitutes a violation of the TCPA or FTSA; and

e. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

91.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

92.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

93.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant's and/or their agents, if any, as discovery may reveal.

94.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

95.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act
(47U.S.C. § 227(b)(1)(B) and/or (b)(1)(A)(iii)) on behalf of the Robocall Class)**

96.     Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-95 as if fully set forth herein.

97. The Defendant violated the TCPA by sending or causing to be sent calls to the residential telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

98. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

99. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

100. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below.

## SECOND CAUSE OF ACTION

### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)

101. Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-95 as if fully set forth herein.

102. The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute

18

numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

103.    Defendant's violations were negligent, willful, or knowing.

104.    As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

105.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## THIRD CAUSE OF ACTION

19

**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

106.  Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-95 as if fully set forth herein.

107.  It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

108.  It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

109.  Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier, by calling without transmitting CPN or ANI, or by calling while transmitting non-compliant CPN or ANI.

110.  These violations were willful or knowing.

111.  As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the

20

Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

112.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5). WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below

## FOURTH CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,
Fla. Stat. § 501.059
On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

113.    Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-95 as if fully set forth herein.

114.    Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

115.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

116.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of

21

a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

117. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

118. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

119. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers and/or with the playing of a recorded message.

120. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction under the FTSA against future calls. *Id.*

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.    Injunctive relief prohibiting Defendant from using artificial or prerecorded voices to contact residential telephone lines and other protected lines, except for emergency purposes, in the future;

C.    Injunctive relief prohibiting Defendant from transmitting inaccurate and non-compliant caller ID information in the future;

D.    That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and FTSA and $1,500 for each knowing or willful violation; and

E.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

F.    Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: March 16, 2026                        Respectfully submitted,

                                             */s/ Joshua Eggnatz*
                                             Joshua H. Eggnatz, Esq.
                                             Florida Bar No.: 0067926

**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
JEggnatz@JusticeEarned.com

*Local Counsel for Plaintiff and the putative classes*

Andrew Roman Perrong, Esq. *(Pro Hac Vice forthcoming)*
**PERRONG LAW LLC**
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Tel: 215-225-5529 (CALL-LAW)
Fax: 888-329-0305
a@perronglaw.com

*Lead counsel for Plaintiff and the putative classes*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of March 2026, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Middle District of Florida.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz

24